Kyle *v.* The Auburn and Rochester Rail-Road Company.

The statute incorporating the Auburn and Rochester Rail-Road Company vests the title and possession of the land, taken for the purposes of the rail-road, in the corporation. And the owner of the adjacent land has no right to pass over the land thus taken, and cannot cross the rail-road, without being a trespasser; except by virtue of the 10th section of the act of 1838.

Where the map, plan, and profile, required by the statute to be annexed to the petition of a rail-road company praying for the appointment of a jury of appraisers, show that the road is to be constructed with a viaduct at a particular point, for the convenient passage of the owner of lands which are severed by the construction of the rail-road, or with a bridge to be erected over such road for the same purpose, the jury should assess the damages with reference to such plan of construction. And if the corporation afterwards attempts to deprive the land owner of the benefit of such contemplated viaduct, or other artificial crossing place, the court of chancery will interfere for his relief; in case he has no sufficient remedy at law.

The court, in such a case, would consider the map, plan, and profile, a part of the petition presented by the rail-road company. And the rights of the parties would be the same as if the corporation had been authorized to take the land, for the purpose of constructing a rail-road upon that particular plan; and as if the statute

Kyle *v.* The Auburn and Rochester Rail-Road Company.

had directed the jury to estimate the damage, to the land owner, in reference to a rail-road constructed in that manner.

Where the plan and profile of a rail-road, annexed to the petition praying for the appointment of a jury of appraisers, do not show that the road is to be constructed with a viaduct, for the passage of the land owner whose land is severed by the road, from his lands on one side of the track to those lying on the other: nor that it is a part of the plan that the road, generally, is to be constructed with viaducts, bridges, and side embankments, for the purpose of enabling the owners of lands which shall be severed by the rail-road to pass conveniently from one side of the road to the other, the jury, in making their assessment of the damages—when there has been no valid and binding agreement between the corporation and the land owners upon the subject—should proceed upon the ground that where any viaducts, bridges, or other artificial facilities will be necessary, for the convenient crossing of the rail-road, the land owners themselves will have to be at the expense of erecting them. And in the absence of any proof to the contrary, a jury of appraisers will be presumed to have acted upon that principle in assessing damages.

THIS case came before the chancellor upon a demurrer to the complainant's bill. The complainant was the owner of a farm in the county of Cayuga, through which the Auburn and Rochester Rail-Road Company located their rail-road. The line of the road was so located as to leave about twelve acres of the farm to the south of that line; and upon that twelve acres there was a spring of water, at which the complainant had been in the habit of watering his cattle, &c. kept upon other parts of the farm, and at his barn which was north of the rail-road. The corporation not being able to agree with the complainant for the purchase of the land necessary for the purposes of the rail-road, the value of the land, and the damages which the complainant would sustain by the taking of his land, and in the construction of the road, were assessed by a jury; under the provisions of the act of 1836, incorporating the company, and of the act of 1838, amending the same. And the company paid the amount of the assessment, and became seised and possessed of the land mentioned in the certificate of the jury, according to the provisions of those acts. The agents of the corporation thereupon proceeded to construct the rail-road across the farm of the complainant, raising the embankment twelve or fourteen feet high opposite to the complainant's spring, and running off grad-

Kyle v. The Auburn and Rochester Rail-Road Company.

ually to about the natural level of the surface of the earth where the line of the rail-way left the complainant's farm. The complainant thereupon filed his bill in this cause, stating these facts, and also that it was suitable, convenient, and necessary for his farming purposes, that the rail-road should be so constructed as to allow him a free passage, under the same, at a point opposite the spring. He also charged in his bill, that upon the assessment of the damages by the jury for the lands taken, the counsel, agents, and engineers of the company *contended* before the jury that the company, by the provisions of its charter, was legally bound to construct and maintain suitable and convenient crossing places, over or under their road, as circumstances might require, for farming and other necessary purposes; and, whether legally bound or not, that the company would in fact do so; and that, so far as the complainant was concerned, the company would make a crossing place for him under the said road, at or near a point opposite the spring, suitable and convenient for farming purposes. The bill also charged, on the information and belief of the complainant, that the jury believed the representations thus made, and assessed the damages at a sum exceeding one hundred dollars less than they would otherwise have done. The complainant also insisted, in his bill, that the corporation was legally bound to construct a convenient crossing place for him under their road, opposite the spring, independent of any declarations of intention to do so, made to the jury. But the agents and engineers of the corporation, although repeatedly requested to do so, were not constructing their rail-road with such a crossing place under it. The complainant therefore prayed that the corporation might be perpetually enjoined from constructing its rail-road without such crossing place, or that he might have such other relief as should be equitable and just.

*A. Worden*, for the defendants. The prayer of the bill is that the defendants may be restrained from so constructing the track of their road, across the complainant's farm, as to prevent him from having and enjoying at all times a suitable and con-

venient crossing place under said road, and for general relief. The application for an injunction having been denied, and the rail-road being actually constructed, the injunction prayed for would be inoperative. The complainant, under the prayer for general relief, may have such a decree as the equity of the case warrants.

It is submitted that the facts set forth in the bill afford no grounds for the intervention of this court. As long as the award of the jury of appraisers stands, it must have all the effect given to it by the statute. If that award was made upon any suggestion of counsel, as stated in the bill, or if it varied from what it would have been had such suggestions not been made, it may perhaps be set aside, but the court cannot interfere to remedy any thing done amiss by the jury of appraisers. They were acting under the provisions of the charter, in assessing the value of the complainant's land to be taken, and his damages to arise from the construction of the road. If they assessed the damage upon any other principle, they have been unmindful of their duty, and it is not perceived on what principle this court can interfere to correct errors of the jury. The company, under the award, have acquired all the rights secured and resulting from it, by the provisions of the charter. (*Laws of* 1838, *p.* 283, § 9.) If the representations of the counsel and agents of the company, as stated in the bill, amount to any thing, they create a contract for which the complainant has his remedy in a court of law. But they do not amount to a contract, and are not binding on the company; as there is no authority from the company shown authorizing any such statements.

The bill seems framed upon the idea that the company are to construct their road with viaducts, if the convenience of the owners of adjoining lands would be promoted thereby. By vesting the fee of the land in the company, all right of entry is taken away from the owners of adjacent lands: they would have no right to cross over or under the road. To give a right of this nature, the tenth section of the act last cited, confers upon individuals through whose land the road passes, the right of passing over the road at *suitable* and convenient places for

Kyle *v.* The Auburn and Rochester Rail-Road Company.

farming purposes. This right belongs to the complainant, and he has not been disturbed in it. No grounds are perceived on which the bill can be sustained, and the demurrer, it is sub-- mitted, is well taken.

*W. T. Worden,* for the complainant. The defendants hold solely under the statute creating the corporation. The act of incorporation being an abridgment of the rights of others, should be construed strictly as against the corporation. A power derogatory to private property must be construed strictly and not enlarged by intendment. (*Lofft,* 438.) Acts of parliament, conferring new and extraordinary powers of a special nature upon particular persons, affecting the property of individuals, or giving exemption from a general burden, attaching by law upon all parties, should receive a strict interpretation. (*Rex* v. *Croker, Cowp.* 25.) Where particular powers are granted to a company, if they enter upon any man's land, they must clearly show their authority; and if the words of the statute on which they rely are ambiguous, every presumption is to be made against the company, and in favor of private property. (*Scale* v. *Pickering,* 4 *Bing.* 450. *See also Dwarris on Statutes,* 750.) If the complainant had no rights prior to the act of April, 1838, (*Laws of* 1838, *p.* 87,) the 10th section of the act would confer upon him the right to cross the road at suitable and convenient places for farming and other necessary purposes. And by virtue of that section he would have a right to cross either over or under the road, as might be suitable and convenient; and the defendants would have no authority to prevent him from exercising that right. So far as the complainant is concerned, the 10th section is remedial. It was intended to remedy any inconvenience or injury which the general statute might occasion the owners of land taken for the construction of the road. As a general rule, a remedial statute ought to be construed liberally, giving it an equitable or rather a benignant interpretation. The letter of the act will be sometimes enlarged, sometimes restrained, and sometimes it has been said the construction made is contrary to the

letter. (*Dwarris on Stat.* 718.) Thus it is laid down, that a statute may be extended by construction to other cases, within the same mischief and occasion of the act, though not expressly within the words. (*Idem.*)

The legislature did not intend to compel the owners of land always to pass over the top of the road. This would be unreasonable, in some instances impossible. Whenever it is more reasonable and proper that the company should so construct their road, as to allow the land owner a passway under it, than to compel the owner to pass up over the embankment, they should do so. And where it is more reasonable and proper that the land owner should pass up over the embankment, than to compel the company to build a passway, the land owner ought to cross over.

The 10th section of the act of 1838 secures to the landowner, in express terms, the right to pass under the road. It provides that the rights and interest acquired by the corporation, shall not be deemed to prevent any individual through whose lands the said rail-road may run, or the grantees of such owner, from passing over the lands so taken, or the road constructed thereon. The statute is in the alternative. He may pass over the land so taken, or the road constructed thereon. The statute then in express terms secures to the land owner the right to pass over the land taken, under the rail-road; or he may pass over the road constructed thereon.

In construing a statute regard ought to be paid to the construction put upon similar statutes in force at the time when the one in question was passed. It is a maxim that *contemporanea expositio est.* So in this case, all the rail-roads constructed, and in progress of construction, when the act under which the defendants hold were passed, were so constructed as to allow passways under or over the line of the road, as the facts and the necessities of each case might warrant. The legislature did not intend to divide a man's farm by a rail-road a hundred feet high, and not allow him to pass under the line of the road, from one portion of his farm to the other. Nor can any such construction be put upon the statute without doing

Kyle *v.* The Auburn and Rochester Rail-Road Company,

violence to the English language, and to the rights of private property. The defendants are bound by what took place before the jury of appraisers. It was an agreement; and the fact that the jury assessed a less sum to the complainant in consequence thereof than they otherwise would have done, is a sufficient consideration to support it; and the defendants are estopped from giving the statute any other construction. As was said in *Kendall* v. *Butler*, (10 *Wend.* 119,) they chose to make a law of their own, for the assessment of damages, and they must abide by it. If the defendants are not bound by what took place before the jury, they practiced a fraud upon the jury, to the injury of the complainant; from which fraud this court ought to relieve him.

*A. Worden*, in reply. The counsel for the complainant contends that a viaduct being convenient for his accommodation, the defendants are bound to construct it, upon general principles and on grounds entirely distinct from any thing which took place before the jury.

The whole of the complainant's bill must be taken together. If that showed a case of irreparable injury to the complainant unless the viaduct was made, there would be some reason for the application of the general principles cited and referred to by his counsel. But the bill shows no such case. However convenient it may be for the complainant to have this viaduct constructed, it is not shown that by not constructing it irreparable injury would ensue. The company proposes to make the road without a viaduct. Viaducts are no part of the road. They are not necessary for its construction; and the damage the complainant is entitled to, and which the jury were bound to assess, are such as would result from the construction of the road in the ordinary way, and as the company is authorized to construct it. The statute does not contemplate that the jury, in making their estimate of damages, should take into consideration any particular mode of construction whereby the damage would be less than would result from another mode. If this was to be considered by the jury, the statute should have

required them to specify, in the award, the mode of construction in reference to which their estimates were made.

The complainant does not pretend that the defendants are constructing their road in an unusual manner, and by that means working him an injury; but he alleges it was understood by the jury that the company would construct this viaduct, and that the damages were assessed on the supposition that it would be built. The whole of the allegations on this subject in the bill are that the company, by their counsel, agents and engineers, contended before the jury that the company were bound to make crossing places over and under their road, and that whether bound or not, they would do so; and that, as far as the complainant was concerned, the company would make a crossing place under the road, on the complainant's farm at or near the point designated. And the complainant charges, on his information and belief, that the jury believed the representations so made, and therefore assessed the damages at more than a hundred dollars less than they otherwise would have done. There is no allegation that the complainant assented that the jury should take into consideration the declarations of the agents and counsel of the company, nor is there any thing which amounts to an agreement between the complainant and the company that the company should build this viaduct. If the complainant had set forth an agreement between himself and the company that this viaduct should be built, and assented that the jury should assess the damages in reference to such an agreement, he might have a remedy. But it does not appear that he ever assented on his part that the jury should take into consideration those declarations of the agents and counsel: and this court will not assume that under these vague statements, not concurred in or assented to by the complainant, or amounting to a contract as between him and the company, the jury have proceeded upon any other principle in estimating the damages than that which by their oaths and the statute they were bound to adopt.

If there was an agreement between the company and the complainant that the company should construct the viaduct,

Kylo v. The Auburn and Rochester Rail-Road Company.

the complainart-has his remedy on such contract in a court of law. But this court will perceive no such contract is set out in the bill, and therefore that no relief can be predicated on such a contract. If by any fraud the damages were assessed at less than they would have been, such fraud should have been distinctly set forth and charged in the bill, so that an issue could be taken upon it. It is not even averred that the statements were made by the counsel and engineers, with a view or intent of deceiving or misleading the jury. And before this court interferes on the ground of fraud, it must be made clearly to appear that a fraud was not only practiced but intended.

THE CHANCELLOR. The counsel for the complainant is clearly wrong in supposing that the corporation, by the provisions of its charter, is bound to construct a viaduct for the complainant, under the track of the rail-road, at the point designated in his bill, or at any other point. The statute having vested the title and possession of the land, taken for the purposes of the rail-road, in the corporation, the tenth section of the act of 1838 was necessary to give to the owner of the adjacent lands the right to pass over the land thus taken, and to cross the rail-road, without being a trespasser. The corporation, therefore, is bound to permit the owners of the adjacent lands to cross the rail-road at convenient and necessary crossing places. But it is not bound to construct viaducts or embankments for that purpose, except such as were designated upon the profile and map of the road, referred to in the third section of the act of April, 1838. (*Laws of* 1838, *p.* 283.) That section provides that upon the application to the judge to appoint the jury of appraisers, the corporation shall annex to its petition *a map, plan, and profile of the road.* The object of requiring this map, plan, and profile of the road was, undoubtedly, to apprise the owners of the lands to be assessed of the manner in which the road was intended to be constructed, in reference to the height of its embankments, or the depth of its excavations, and in reference to culverts, viaducts, &c. as well as to the courses of the track; to enable the jury properly to estimate the damage

which would probably be done to the owner of the land taken, for the construction of the road in the manner contemplated by such plan, or profile, as well as the value of the land itself. And if such plan and profile, annexed to the petition of the corporation, showed that the road was to be constructed with a viaduct, at a particular point, for the convenient passage of the owner of the lands which should be severed by the construction of the rail-road, or with a bridge to be erected over such road for the same purpose, it would be proper for the jury to assess the damages with reference to such plan of construction. In the case supposed, if the corporation afterwards attempted to deprive the land owner of the benefit of the contemplated viaduct, or other artificial crossing place, it would be the duty of this court to interfere for his relief, in case he had no sufficient remedy at law. The court, in a case of that description, would consider the map, plan, and profile, a part of the petition. And the rights of the parties would be the same as if the petitioners had prayed for an assessment of the damages, and that the title to the land might be vested in the corporation for the purpose of making a rail-road thereon, upon the plan thereto annexed, and with the accommodations for crossing the same, by the owner of the lands taken, as specified in that plan. In other words, their rights would be the same as if the rail-road company had been authorized to take the land for the purpose of constructing a rail-road upon that particular plan, and as if the statute had directed the jury to estimate the damage to the landowner in reference to a rail-road constructed in that manner. But if the jury were not called upon and required to assess the damages in reference to such a plan of construction, the fact that the applicants for the rail-road had represented to the legislature that they intended to construct the rail-road in a particular manner, not specified in or referred to by the subsequent act of incorporation, would not entitle the owner of the lands, severed by the rail-road, to insist that such a crossing place should be constructed for him, by the company. (*North British Railway* v. *Tod*, 4 *Rail. Cas.* 449.)

In the case under consideration, it is not alleged that the plan

and profile of the rail-road, annexed to the petition, showed that the road was to be constructed with a viaduct for the passage of the complainant, from his barn and lots on the north side of the track, to his spring on the south side thereof; or that it appeared, by the map and profile and plan of the road, to be a part of the plan that the road, generally, was to be constructed with viaducts, bridges, and side embankments, for the purpose of enabling the owners of lands which should be severed by the rail-road to pass conveniently from one side of the road to the other. The jury, therefore, in the assessment of the damages, where there was no valid and binding agreement between the corporation and the landowners, should have proceeded upon the ground that where any viaducts, bridges, or other artificial facilities would be necessary for the convenient crossing of the rail-road, the land owners themselves would have to be at the expense of erecting them, or must submit to the inconvenience of crossing the rail-road at some other place, where the grade of the road would enable them to do so. The jury, in the present case, must legally be presumed to have acted upon that principle, in assessing the plaintiff's damages. Although it is alleged that the counsel and agents of the corporation contended before the jury that the company was bound to make proper crossing places, to induce the jury to give a less amount of damages than was claimed by the complainant, the reasonable presumption is that his counsel insisted the law was otherwise; to induce the jury to enhance the damages, for the injury which the complainant would sustain by the taking of his land, and the construction of the road. The presumption therefore is, that the jury assessed the damages according to the legal rights of the parties. And the jurors cannot be received to impeach their assessment, by showing that they mistook either the law or the facts of the case. Nor can this court grant relief, to either of the parties to the assessment, upon that ground.

The bill also states that the counsel and agent for the corporation *contended* before the jury, that a viaduct would be made for the complainant's accommodation, whether the company was legally bound to make it or not. But I do not understand the

complainant as intending to allege that any *agreement* was made with him that such a crossing place should be constructed for his accommodation; or that he or his counsel consented that the jury should assess his damages upon any such principle. And if such an agreement was made, the proper remedy of the complainant, for the breach of the agreement, was by an action at law; in which he would recover the full compensation that the jury ought to have awarded him if no such agreement had been made. This may be a hard case for the complainant, and the jury who assessed the damages may, from their ignorance of their duty, have done him injustice. But I do not find any allegation in the bill that the damages assessed to him were not in fact the full value of the land taken, and a fair and adequate compensation for all the injury he has sustained, or will sustain, by the making of the rail-road through his farm in the manner specified in the map, plan and profile annexed to the petition, presented to the judge under whose superintendence the jury was drawn and empannelled.

The demurrer, therefore, must be allowed. And the bill must be dismissed with costs, but without prejudice to the complainant's rights, if he has any, at law.